# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GARY A. MCINTOSH,

    Plaintiff,

    v.

AMANDA K. GILLEY, *et al.*,

    Defendants.

Civil Action No. 10–119 (CKK)

## MEMORANDUM OPINION
(November 30, 2010)

Plaintiff Gary McIntosh ("McIntosh") brings the above-captioned action against Amanda Gilley, her parents David & Linda Gilley, and her brother and sister-in-law Jeff & Kristin Gilley (collectively "Defendants") pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332. McIntosh's claims arise out of an alleged general partnership with his former girlfriend, Amanda Gilley, in a business known as AKG Photography ("AKG"). McIntosh asserts an unjust enrichment claim against Amanda Gilley, seeking to recover his investments in AKG and his share of AKG's profits. McIntosh also asserts a libel claim against David & Linda Gilley for an allegedly defamatory email that they sent to McIntosh's superior officer in the U.S. Navy. Finally, McIntosh named Jeff & Kristin Gilley as defendants in the Complaint because Amanda Gilley allegedly moved AKG's operations and equipment into their home.

Currently before the Court are Jeff & Kristin Gilley's [4] Motion to Dismiss under Rule 12(b)(6), which included a motion for sanctions under 28 U.S.C. § 1927 ("§ 1927"); David & Linda Gilley's [6] Motion to Dismiss under Rule 12(b)(2); Amanda Gilley's [17] Motion to

Dismiss under Rule 12(b)(1) or, in the alternative, Motion for Summary Judgment, which also included a motion for sanctions under § 1927; and McIntosh's construed motion for sanctions under § 1927 included in his [5] Opposition to Jeff & Kristin Gilley's Motion to Dismiss.

For the reasons set forth below, the Court shall (1) GRANT Jeff & Kristin Gilley's motion to dismiss because the Complaint does not state a claim against them; (2) GRANT David & Linda Gilley's motion to dismiss because McIntosh has not alleged sufficient facts to establish personal jurisdiction under D.C.'s long-arm statute; (3) GRANT Amanda Gilley's motion to dismiss for lack of subject matter jurisdiction because the Court is very confident that, based on the facts presented, McIntosh will not recover in excess of $75,000 from Amanda Gilley under his unjust enrichment claim; and (4) DENY Amanda Gilley's, McIntosh's, and Jeff & Kristin Gilley's motions for sanctions.

## I. BACKGROUND

McIntosh alleges that he and Amanda Gilley formed AKG as a general partnership, pursuant to the District of Columbia Uniform Partnership Act, on September 24, 2007. Compl. ¶¶ 6-7, 18-24, Docket No. [1].[1] According to their unwritten agreement, McIntosh claims that he was to provide AKG's capital and Amanda Gilley was to run AKG as a photography business. *Id.* ¶ 21. The Complaint lists several of McIntosh's alleged investments in AKG, including $10,000 in start-up funding; $5000 to move Amanda Gilley and AKG from Texas to Ft. Belvoir, Virginia; $6335 per month from November 2007 to May 2008 to provide a "home office" for AKG at Ft. Belvoir; $182,175.74 for a condominium in the District of Columbia ("District" or

---

[1] The Complaint designates two sets of paragraphs the numbers two through six. To avoid confusion, the Court shall cite to the Complaint's paragraphs as if the paragraphs were consecutively numbered.

"D.C.") that functioned as AKG's "home office" from May 2008 to November 2008; and

funding for AKG's equipment and website. *Id.* ¶¶ 9-14; Pl.'s Opp'n to Amanda Gilley's Mot.,

Ex. A (Declaration of McIntosh[2] (hereinafter "McIntosh Decl.")), at 3. McIntosh contends that

Amanda Gilley agreed to repay him for his investments in AKG, Compl. ¶ 15, and that she in

fact made two repayments totaling $775, McIntosh Decl. at 2.

In regard to the condominium, the parties disagree as to its use and purpose. According

to McIntosh, he purchased the condominium, a month before beginning a three year deployment

in Japan, with the understanding that it would function as AKG's "home office" and Amanda

Gilley would also reside there. *Id.* at 3. McIntosh further avers that Amanda Gilley agreed to

pay the condominium's expenses, including mortgage and utilities, as one of AKG's business

expenses. *Id.* Amanda Gilley, in contrast, does not characterize the condominium as AKG's

"home office," but rather as a residence for herself, McIntosh, and, at times, McIntosh's mother.

*See* Amanda Gilley's Mot. to Dismiss ("Amanda Gilley's Mot."), Ex. A (Declaration of Amanda

Gilley (hereinafter "First Amanda Gilley Decl.")), ¶ 14.

Despite the parties' disagreement as to the purpose of the condominium, several facts

regarding the condominium are undisputed. First, the condominium's mortgage has always been

exclusively in McIntosh's name. *See* First Amanda Gilley Decl. ¶ 14; McIntosh Decl. at 3.

Second, when McIntosh purchased the condominium in May 2008, he initially placed Amanda

Gilley's name, along with his own, on the condominium's title. S*ee* First Amanda Gilley Decl.

¶ 14; McIntosh Decl. at 3. Third, although Amanda Gilley paid the condominium's mortgage for

---

[2] McIntosh purports to "swear under oath" that the facts asserted in his declaration are true. However, his declaration is not notarized and it does not conform to the requirements of 28 U.S.C. § 1746. Nevertheless, the Court accepts the facts asserted in McIntosh's declaration as true for the purposes of this motion.

the several months she resided there, in October 2008 she ceased paying the condominium's mortgage, vacated the premises, removed AKG's equipment from the premises, and ended her personal relationship with McIntosh. *See* Compl. ¶ 13, First Amanda Gilley Decl. ¶¶ 14-15; McIntosh Decl. at 3. Finally, Amanda Gilley's name was removed from the condominium's title in December 2008. First Amanda Gilley Decl. ¶ 19; McIntosh Decl. at 6.

McIntosh alleges that after vacating the condominium, Amanda Gilley moved all of AKG's equipment and files into Jeff & Kristin Gilley's residence in Silver Spring, Maryland. Compl. ¶¶ 13, 15. According to McIntosh, Jeff & Kristin Gilley allowed Amanda Gilley to move AKG into their home in order "to prevent [McIntosh]'s involvement in the AKG Partnership." *Id.* ¶ 17. McIntosh further avers that since Amanda Gilley moved AKG, she has refused to communicate with him, has failed to repay him for his investments in AKG, and that her retention of such investments constitutes unjust enrichment. *See id.* ¶¶ 15, 33-38.

McIntosh also alleges that Amanda Gilley's parents, David & Linda Gilley, committed libel by sending an email to McIntosh's commanding officer in the U.S. Navy, which claimed that McIntosh was harassing Amanda Gilley through his attempts to procure repayment of his investments in AKG. *Id.* ¶¶ 16, 25, 27. McIntosh avers that this email contained false statements that injured his military career, caused him disgrace and reputational damage, prevented him from receiving a promotion, and will force him to retire from the U.S. Navy earlier than expected. *Id.* ¶¶ 30-32; *see also* McIntosh Decl. at 8-9.

On January 21, 2010, McIntosh filed the instant Complaint, asserting diversity jurisdiction under 28 U.S.C. § 1332 and venue under 28 U.S.C. § 1391. Compl. at 1-2. The Complaint does not enumerate separate counts against the various Defendants. Rather, after

alleging some introductory facts, the Complaint alleges additional facts under two headings: (1) "Libel," immediately under which is the additional heading "Defamation Against Parents of Defendant Amanda Gilley;" and (2) "Unjust Enrichment." *Id.* at 5-6. The Complaint seeks the following relief: (1) appraisal of AKG and award of McIntosh's share of AKG's profits; (2) appointment of a trustee to account for AKG's proceeds; (3) recovery of $272,000 in investments and profits in AKG for breach of the partnership agreement; (4) recovery of $272,000 under an unjust enrichment claim for benefits conferred to AKG; and (5) $500,000 in damages under his libel claim. *Id.* at 6-7.

In response to the Complaint, Jeff & Kristin Gilley filed a [4] Motion to Dismiss under Rule 12(b)(6) and for sanctions ("Defs. J. & K. Gilley's Mot."). McIntosh responded with an [5] opposition ("Pl.'s Opp'n to Defs. J. & K. Gilley's Mot."), which also included a motion for sanctions, and Jeff & Kristin Gilley filed a [7] reply ("Defs. J. & K. Gilley's Reply"). Subsequently, David & Linda Gilley filed a [6] Motion to Dismiss under Rule 12(b)(2) ("Defs. D. & L. Gilley's Mot."), attaching as exhibits thereto affidavits disavowing that they have any contacts with the District on which jurisdiction may be based. McIntosh then filed an [8] opposition ("Pl.'s Opp'n to Defs. D. & L. Gilley's Mot.") and David & Linda Gilley filed a [9] reply ("Defs. D. & L. Gilley's Reply"). Finally, Amanda Gilley filed a [17] Motion to Dismiss under Rule 12(b)(1) or, in the alternative, a Motion for Summary Judgment ("Def. A. Gilley's Mot."), which also included a motion for sanctions. Amanda Gilley attached various exhibits to her Motion to Dismiss, including a Declaration of Amanda Gilley ("First Amanda Gilley Decl."), Def. A. Gilley's Mot., Ex. A, and several email messages purportedly written by McIntosh after Amanda Gilley moved out of the condominium, *id.*, Exs. C-E. McIntosh then filed an [19]

opposition ("Pl.'s Opp'n to Def. A. Gilley's Mot."), attaching his own declaration ("McIntosh Decl.") responding to Amanda Gilley's declaration and detailing his alleged investments in AKG.  Finally, Amanda Gilley filed a [20] reply ("Def. A. Gilley's Reply"), along with another Declaration of Amanda Gilley (hereinafter "Second Amanda Gilley Decl.") attesting to AKG's profits since its founding in 2007.  The parties' briefing on the pending motions is now complete, and the matter is therefore ripe for review and resolution by this Court.[3]

## II.  LEGAL ANALYSIS

### A.      Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)

A plaintiff bears the burden of establishing that a federal court has subject matter jurisdiction.  *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction . . . [and it] is to be presumed that a cause lies outside this limited jurisdiction.").  In evaluating a motion to dismiss under Rule 12(b)(1), a court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted); *see also Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.").  A court must, however, accept as true all factual allegations contained in the complaint and afford the plaintiff the benefit of all favorable inferences that can

---

[3] As the Court concludes that the issues presented in the Defendants' pending motions may be resolved on the briefing filed by the parties, oral arguments are unnecessary and the Court shall therefore DENY Defendants' requests that the Court hold oral arguments on each of the pending motions.

be drawn from the alleged facts. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).

Nonetheless, "[w]hen the defendant challenges the jurisdictional amount, [the] plaintiff must come forward with some facts in support of her assertion that the jurisdictional amount has been met." *Mace v. Domash*, 550 F. Supp. 2d 101, 104 (D.D.C. 2008); *see also Gomez v. Wilson*, 477 F.2d 411, 420 (D.C. Cir. 1973) ("[W]hen, as here, a formal allegation of jurisdictional amount . . . is controverted, a factual issue emerges and the burden of establishing jurisdictional amount is thrust upon the claimant."). The Supreme Court has provided that:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. . . . But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

*St. Paul Mercury Indem. Co. v. Red Cab Co.* ("*St. Paul Mercury*"), 303 U.S. 283, 288 (1938) (footnotes omitted). The D.C. Circuit has interpreted *St. Paul Mercury* as requiring courts to be "very confident that a party cannot recover the jurisdictional amount before dismissing the case for want of jurisdiction." *Rosenboro v. Kim,* 994 F.2d 13, 17 (D.C. Cir. 1993).

    B.    *Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2)*

A plaintiff bears the burden of establishing a factual basis for asserting personal jurisdiction over a defendant. *See Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). "The plaintiff, however, cannot rest on bare allegations or conclusory statements and

must allege specific facts connecting each defendant with the forum." *GTE New Media Servs., Inc. v. Ameritech Corp.*, 21 F. Supp. 2d 27, 36 (D.D.C. 1998); *see also Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (same). "To make such a showing, the plaintiff is not required to adduce evidence that meets the standards of admissibility reserved for summary judgment and trial; rather she may rest her arguments on the pleadings, 'bolstered by such affidavits and other written materials as [she] can otherwise obtain.' " *Urban Inst. v. FINCON Servs.*, 681 F. Supp. 2d 41, 44 (D.D.C. 2010) (quoting *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005)) (alteration in original). When determining whether personal jurisdiction exists over a defendant, the Court need not treat all of a plaintiff's allegations as true. Instead, the Court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000) (citation omitted). Any factual discrepancies with regard to the existence of personal jurisdiction, however, must be resolved in favor of the plaintiff. *See Crane*, 894 F.2d at 456.

C.      *Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)*

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. (8)(a), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* "Nor

does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557). Rather, a complaint must contain sufficient factual allegations that if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

When considering a motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Emp. Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.") (internal quotation omitted). However, a plaintiff must provide more than just "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1950. When a complaint's well-pleaded facts do not enable a court, "draw[ing] on its judicial experience and common sense," "to infer more than the mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Id.*

### III. DISCUSSION

A.       *Defendants Jeff & Kristin Gilley's Motion to Dismiss Pursuant to Rule 12(b)(6)*

Jeff & Kristin Gilley move to dismiss the Complaint under Rule 12(b)(6), arguing that the Complaint does not assert a claim against them and, even if it did, that McIntosh has failed to

state a claim against them for either libel or unjust enrichment. *See* Defs. J. & K. Gilley's Mot. at 4-5. In response, McIntosh does not contend that he is asserting a claim against Jeff & Kristin Gilley for libel or unjust enrichment. *See* Pl.'s Opp'n to Defs. J. & K. Gilley's Mot. at 3-4. Rather, McIntosh cobbles together an unspecified cause of action by alleging that because Jeff & Kristin Gilley allowed Amanda Gilley to move into their residence, they hindered McIntosh's ability to share in AKG's proceeds. *See id.*

The Court shall grant Jeff & Kristin Gilley's motion to dismiss because the Complaint fails to provide "a short and plain statement of the claim showing that [McIntosh] is entitled to relief" from Jeff & Kristin Gilley. Fed. R. Civ. P. 8(a)(2). Notably, the Complaint contains the following three allegations regarding Jeff & Kristin Gilley: (1) that they reside in Silver Spring, Maryland, Compl. ¶ 5; (2) that they allowed Amanda Gilley to move AKG's equipment into their residence, *id.* ¶ 13; and (3) that they allowed AKG to be moved into their home "to prevent Plaintiff's involvement in the AKG Partnership," *id.* ¶ 17. None of these allegations establish any legal claim against Jeff & Kristin Gilley.

Nonetheless, McIntosh argues that the Complaint states a claim against Jeff & Kristin Gilley because it alleges that they allowed Amanda Gilley to operate AKG from their home and that their "intent was to destroy Plaintiff's interest in AKG." *See* Pl.'s Opp'n to Defs. J. & K. Gilley's Mot. at 3-4. However, McIntosh has failed to present any legal authority indicating that Jeff & Kristin Gilley can be liable under D.C. law for allowing Amanda Gilley to operate AKG out of their home or for having the "intent to destroy" his interest in a general partnership. *See id.* Accordingly, the Court shall grant Jeff & Kristin Gilley's motion to dismiss for failure to state a claim.

B.       *Defendants David & Linda Gilley's Motion to Dismiss Pursuant to Rule 12(b)(2)*

David & Linda Gilley move to dismiss McIntosh's libel claim against them for lack of personal jurisdiction.  Defs. D. & L. Gilley's Mot. at 1.[4]  In affidavits submitted with their motion to dismiss, David & Linda Gilley declare that they have been residents and domiciliaries of Texas during all times relevant to this case.  *See* Defs. D. & L. Gilley's Mot., Ex. A (David Gilley Affidavit (hereinafter "David Gilley Aff. ")), ¶ 3; *id.* Ex. B (Linda Gilley Affidavit (hereinafter "Linda Gilley Aff. ")), ¶ 3.  McIntosh does not dispute this and instead appears to assert that jurisdiction is proper under the District's long-arm statute.  *See* Pl.'s Opp'n to Defs. D. & L. Gilley's Mot. at 3-5; *see also id.* at 4 (characterizing David & Linda Gilley as "non-residents" of the District).[5]

For this Court to exercise personal jurisdiction over David & Linda Gilley under the District's long-arm statute, McIntosh must plead facts sufficient to satisfy (1) the long-arm statute; and (2) the constitutional requirements of due process.  *See* Fed. R. Civ. P. 4(k)(1)(A);

_____

[4] Although David & Linda Gilley ask the Court to quash the service of process, *see* Defs. D. & L. Gilley's Mot. at 1, the Court construes their argument as arising under Rule 12(b)(2) and not Rule 12(b)(5) in light of their discussion of personal jurisdiction, reference to Rule 12(b)(2), and omission of a reference to Rule 12(b)(5) or the service of process in this case.

[5] McIntosh repeatedly cites to D.C. Code § 13-422, *see* Pl.'s Opp'n to Defs. D. & L. Gilley's Mot. at 4-5, which is the code section creating general personal jurisdiction based on, for example, an individual being domiciled within the District, D.C. Code § 13-422.  McIntosh, however, also argues that jurisdiction is proper under the "D.C. Long Arm Statute," Pl.'s Opp'n to Defs. D. & L. Gilley's Mot. at 4, quotes part of the long-arm statute, *see id.*, and does not argue that personal jurisdiction exists over David & Linda Gilley due to them being residents of the District, *see generally id.*  Accordingly, despite repeated citations to D.C. Code § 13-422, the Court understands McIntosh's arguments as actually arising out of the long-arm statute, D.C. Code § 13-423.  Furthermore, even if McIntosh were asserting general personal jurisdiction under D.C. Code § 13-422, as McIntosh has not disputed that David & Linda Gilley are residents of Texas, the Court would find that it may not exercise general personal jurisdiction over David & Linda Gilley.

*GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).  The

long-arm statute provides in pertinent part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person,
> who acts directly or by an agent, as to a claim for relief arising from the person's-
>
>> (1) transacting any business in the District of Columbia;
>>
>> (2) contracting to supply services in the District of Columbia;
>>
>> (3) causing tortious injury in the District of Columbia by an act or omission
>> in the District of Columbia;
>>
>> (4) causing tortious injury in the District of Columbia by an act or omission
>> outside the District of Columbia if he regularly does or solicits business,
>> engages in any other persistent course of conduct, or derives substantial
>> revenue from goods used or consumed, or services rendered, in the District
>> of Columbia;
>>
>> . . .
>
> (b) When jurisdiction over a person is based solely upon this section, only a claim for
> relief arising from acts enumerated in this section may be asserted against him.

D.C. Code § 13-423.  In this case, McIntosh does not assert that jurisdiction is proper under a

specific subsection of the long-arm statute.  Instead, McIntosh argues that jurisdiction is proper

because David & Linda Gilley: (1) visited the District; (2) telephoned Amanda Gilley when she

resided in the District from their Texas residence; (3) attempted to interfere with AKG while

AKG was transacting business in the District; and (4) caused injury to McIntosh in the District

through their allegedly libelous email.  *See* Pl.'s Opp'n to Defs. D. & L. Gilley's Mot. at 3-4.[6]

---

[6] The Court notes that in his opposition, McIntosh misconstrues the District's long-arm
statute as being an elements test whereby personal jurisdiction exists if the long-arm statute's
subsections (a)(1), (a)(2), and (a)(3) are all satisfied.  *See* Pl.'s Opp'n to Defs. D. & L. Gilley's
Mot. at 4.  Taken literally, this argument is irrelevant as to whether the Court has personal
jurisdiction over David & Linda Gilley.  However, rather than dismiss McIntosh's argument
entirely, the Court has generously extracted the facts McIntosh alleges create personal
jurisdiction and shall analyze them under the District's long-arm statute.

For the reasons set forth below, the Court shall grant David & Linda Gilley's motion to dismiss for lack of personal jurisdiction.

As a preliminary matter, the Court notes that McIntosh seeks to supplement the Complaint's allegations by claiming that, in addition to the libel claim, David & Linda Gilley had "the intention to destroy the partnership."  Pl.'s Opp'n to Defs. D. & L. Gilley's Mot. at 5.  The Court agrees, however, with David & Linda Gilley that the Complaint only alleges a libel claim against them and the Complaint does not otherwise claim that they were involved in the alleged partnership.  *See* Defs. D. & L. Gilley's Reply at 3; *see generally* Compl.  Therefore, even if having "the intention to destroy [a] partnership" were a cause of action, and McIntosh has provided no legal authority supporting such an assertion, McIntosh may not amend the Complaint through his opposition.  *See, e.g.*, *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss") (citation omitted).  Consequently, as the Complaint only alleges a libel claim against David & Linda Gilley, *see* Compl. ¶¶ 25-32, the sole question before this Court in this motion to dismiss is whether David & Linda Gilley's alleged submission of a libelous email to McIntosh's commanding officer is an act that creates personal jurisdiction under the District's long-arm statute.  *See* D.C. Code § 13-423(b).  For the reasons set forth below, the Court concludes that McIntosh has not alleged specific facts that establish personal jurisdiction under the District's long-arm statute.

First, McIntosh's allegations that David & Linda Gilley visited the District, telephoned Amanda Gilley, and that AKG transacted business in the District do not pertain to McIntosh's libel claim.  Therefore, under D.C. Code 13-423(b), such allegations cannot independently create

personal jurisdiction over David & Linda Gilley.[7]

Second, because McIntosh's libel claim is an allegation of tortious injury, subsections (a)(3) and (a)(4) of the long-arm statute would appear to be most relevant. *See Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217, 220-21 (D.C. Cir. 1986) (upholding the district court's interpretation that the "act" in a libel claim is the creation and publication of the statement). However, as David & Linda Gilley indicate, the Complaint fails to meet either (a)(3) or (a)(4) because the Complaint does not allege, *inter alia*, where David & Linda Gilley created and sent the email at issue. *See* Defs. D. & L. Gilley's Mot. at 2-3, 5-6; Defs. D. & L. Gilley's Reply at 2; *see generally* Compl. Accordingly, the Court finds that the Complaint does not allege specific facts connecting David & Linda Gilley's allegedly libelous email to the District. *See GTE New Media Servs.*, 21 F. Supp. 2d at 36 ("The plaintiff . . . must allege specific facts connecting each defendant with the forum.").

Third, although McIntosh's opposition does contain some allegations that may be relevant under either subsection (a)(3) or (a)(4) of the long-arm statute, these allegations are nonetheless an insufficient basis for this Court to exercise personal jurisdiction over David & Linda Gilley. *See Crane*, 894 F.2d at 456. McIntosh claims that the allegedly libelous email "ruined [his] Naval career from the District of Columbia," Pl.'s Opp'n to Defs. D. & L. Gilley's Mot. at 4, and that "injury was caused by emails sent from D.C. that stated Plaintiff was harassing the Gilley family which forced Plaintiff to resign from the U.S. Navy at an early date[,]" *id.* at 4-5. Although the Court may consider the jurisdictional allegations raised in

---

[7] In addition, McIntosh's allegations regarding AKG transacting business in the District misconstrue the long-arm statute's focus. Only David & Linda Gilley's actions are relevant under the long-arm statute—not AKG's actions. *See* D.C. Code § 13-423(a).

McIntosh's opposition, *see Philip Morris, Inc.*, 116 F. Supp. 2d at 120 n.4, McIntosh's allegations are merely conclusory and do not satisfy his burden of alleging specific facts that create personal jurisdiction, *see GTE New Media Servs.*, 21 F. Supp. 2d at 36 ("The plaintiff . . . cannot rest on bare allegations or conclusory statements and must allege specific facts connecting each defendant with the forum."). Specifically, McIntosh does not explain how he knows that the email was sent from the District and he does not support this assertion in an affidavit. By contrast, both David & Linda Gilley disavowed by affidavit "engag[ing] in any communication with the Plaintiff's superior officers within the District of Columbia or any other jurisdiction." David Gilley Aff. ¶ 10; Linda Gilley Aff. ¶ 10. Therefore, the Court finds that McIntosh has failed to establish that jurisdiction is proper under (a)(3).

To the extent that McIntosh relies on subsection (a)(4) because the allegedly libelous email was sent from outside of the District, McIntosh has failed to allege that David & Linda Gilley satisfy any of subsection (a)(4)'s so-called "plus factors" : "regularly do[ing] or solicit[ing] business, engag[ing] in any other persistent course of conduct, or deriv[ing] substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." D.C. Code § 13-423(a)(4); *see also Crane*, 814 F.2d at 763 (explaining that D.C. Code § 13-423(a)(4)'s "plus factors" "serve to filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum."). McIntosh has not alleged that David & Linda Gilley rendered services or derived revenue from goods used or consumed in the District. Additionally, McIntosh has not alleged that David & Linda Gilley themselves regularly conduct or solicit business in the District. *See* Pl.'s Opp'n to Defs. D. & L. Gilley's Mot. at 4 (alleging that David & Linda Gilley "attempt[ed] to destroy the

AKG Partnership that was transacting business in D.C.").   Moreover, David & Linda Gilley did not create a "persistent course of conduct" through occasional travel to the District, *see, e.g.*, *FINCON Servs.*, 681 F. Supp. 2d at 47-48 (finding three trips to solicit business in the District did not create a persistent course of conduct), or by telephone calls to the District from their Texas residence, regardless of the calls' frequency or nature, *see, e.g.*, *Tavoulareas v. Comnas*, 720 F.2d 192, 194 (D.C. Cir. 1984) (finding calls to the District are not acts "*in the District*" as required under subsection (a)(4)) (emphasis in the original).   Therefore, even if the allegedly tortious email was sent from outside the District, McIntosh has not alleged sufficient facts to satisfy subsection (a)(4) of the long-arm statute.

In conclusion, after considering the jurisdictional allegations in the Complaint, McIntosh's opposition, and David & Linda Gilley's affidavits, the Court holds that McIntosh has failed to allege specific, non-conclusory allegations that establish personal jurisdiction over David & Linda Gilley under the District's long-arm statute.   Therefore, for the foregoing reasons, the Court shall grant David & Linda Gilley's motion to dismiss for lack of personal jurisdiction.

### C.      *Defendant Amanda Gilley's Motion to Dismiss Pursuant to Rule 12(b)(1)*

Amanda Gilley moves to dismiss the Complaint, arguing that the Court lacks subject matter jurisdiction over McIntosh's unjust enrichment claim because the amount in controversy is less than $75,000—the threshold amount for diversity jurisdiction.   Def. A. Gilley's Mot. at 10-11; *see also* 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States").[8]  McIntosh has alleged that

---

[8] Amanda Gilley has not disputed the Complaint's allegations that complete diversity of citizenship exists between her, a resident of Maryland, and McIntosh, a resident of the District.

this Court has diversity jurisdiction to entertain his claims.  Compl. ¶ 1.  In actions based on this Court's diversity jurisdiction, the Court examines state law, which in this case is D.C. law, to determine what damages may be included in a claim's amount in controversy.  *See Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 352-53 (1961); *see also McQueen v. Woodstream Corp.*, 672 F. Supp. 2d 84, 88, 90-91 (D.D.C. 2009) (examining D.C. law to determine if punitive damages could be construed as part of a fraudulent misrepresentation claim's amount in controversy).

As a threshold matter, the Court notes that despite scattered references to Amanda Gilley's breach of an alleged partnership agreement, McIntosh has only claimed in his filings to this Court that he has alleged an unjust enrichment claim against Amanda Gilley.  Notably, after recounting how McIntosh and Amanda Gilley created a general partnership under the District of Columbia Uniform Partnership Act, McIntosh's opposition cites to case law reciting the elements of an unjust enrichment claim under D.C. law and provides that "[Amanda] Gilley's abandonment of the partnership without proper accounting of the finances with Plaintiff has resulted in unjust enrichment."  Pl.'s Opp'n to Def. A. Gilley's Mot. at 7.  McIntosh does not argue that his allegations against Amanda Gilley constitute another cause of action.  *See generally id.*; *see also* Compl. at 5-6 (containing headings for only "Libel" and "Unjust Enrichment").  Therefore, consistent with McIntosh's representation's to this Court, the Court concludes that McIntosh has asserted only an unjust enrichment claim against Amanda Gilley, and the Court shall consider only damages that are recoverable under an unjust enrichment theory.

---

*See* Compl. ¶¶ 2-3 (alleging the parties' respective residences).

To assert an unjust enrichment claim under D.C. law, McIntosh must allege that: (1) he conferred a benefit on Amanda Gilley; (2) she retained the benefit conferred, and (3) under the circumstances, her retention of the benefit is unjust. *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005) (citing *4934, Inc. v. Dist. of Columbia Dep't of Emp't Servs.*, 605 A.2d 50, 55 (D.C. 1992)); *see also 4934, Inc.*, 605 A.2d at 55 ("Unjust enrichment occurs when a person retains a benefit (usually money) which in justice and equity belongs to another."). "The modern law of unjust enrichment and restitution has its roots in the common law concept of quasi-contract." *Id.* Whether termed a quasi-contract, implied-in-law contract, or an unjust enrichment claim, these synonymous legal theories "ha[ve] been openly acknowledged to be a '[l]egal fiction invented by common law courts to permit recovery by contractual remedy in cases where, in fact, there is no contract . . . .'"). *Id.* (quoting Black's Law Dictionary 324 (6th ed. 1990)) (second alteration in the original); *see also Emerine v. Yancey*, 680 A.2d 1380, 1383 (D.C. 1996) (explaining the various labels for the same legal claim). As an unjust enrichment claim arises in the absence of a contract, one is unable to recover under an unjust enrichment theory when a contract governs the parties' relationship. *Emerine*, 680 A.2d at 1383.

In this case, Amanda Gilley argues that the actual benefit McIntosh conferred to her was $16,000, Def. A. Gilley's Mot. at 10, or, at most, $63,905.36, Def. A. Gilley's Reply at 4, neither of which exceeds $75,000. Since Amanda Gilley has challenged the jurisdictional amount, McIntosh must present some facts supporting his claim that the jurisdictional amount is satisfied in this case. *See Domash*, 550 F. Supp. 2d at 104. Accordingly, McIntosh has provided a declaration detailing his alleged investments in AKG, which claims that Amanda Gilley owes

him $144,914.36. *See* McIntosh Decl. at 5-8.[9] For the reasons set forth below, the Court shall grant Amanda Gilley's motion to dismiss because the Court is very confident that McIntosh will not be able to recover in excess of $75,000 from Amanda Gilley under an unjust enrichment theory.

Although McIntosh asserts some damages recoverable under an unjust enrichment theory,[10] his total alleged amount in controversy is inflated due to two legal errors. First, despite not asserting a libel claim against Amanda Gilley, McIntosh has included damages from his libel claim in his amount in controversy for the unjust enrichment claim. Second, McIntosh has included various condominium-related expenses that are not recoverable under an unjust enrichment theory. In essence, McIntosh has asserted every conceivable claim against Amanda Gilley as damages for his unjust enrichment claim, regardless of whether those damages could be recovered under an unjust enrichment theory.

---

[9] The Court notes that the amount in controversy detailed in McIntosh's declaration conflicts with his assertion of damages for his unjust enrichment claim in both the Complaint and his opposition. The Complaint asserts a claim for $272,000, Compl. ¶ 39, the itemized list in McIntosh's opposition totals approximately $770,142.23, *see* Pl.'s Opp'n to Def. A. Gilley's Mot. at 9, and McIntosh's declaration values his investments in AKG at $144,914.36, excluding damages under his libel claim, McIntosh Decl. at 5-8. Contrary to the other estimates, the Complaint does not explain how it arrives at a claim for $272,000 in damages. *See generally* Compl. Additionally, the opposition provides no explanation for why it deviates from the facts contained in McIntosh's declaration. *See* Pl.'s Opp'n to Def. A. Gilley's Mot. at 8-9. Accordingly, because McIntosh must present some facts supporting his claim for damages to survive Amanda Gilley's motion to dismiss, the Court's foregoing analysis shall focus on the amounts provided in McIntosh's declaration. *See Domash*, 550 F. Supp. 2d at 104.

[10] For example, McIntosh includes $16,307.23 in his claim's amount in controversy for the amount that he allegedly gave Amanda Gilley to purchase equipment for AKG, as well as to move herself and AKG to the District. McIntosh Decl. at 6. McIntosh further alleges that Amanda Gilley agreed to repay him in $300 increments for this $16,307.23. *Id.* These allegations are sufficient to plead $16,307.23 in damages under an unjust enrichment theory.

1.    Damages from McIntosh's Libel Claim Cannot Be Included

In addition to the $144,914.36 that McIntosh claims to have invested in AKG, McIntosh claims that he has lost hundreds of thousands of dollars in earning potential, lost pay, and retirement benefits as a result of false claims made by the Gilley family.  *See* McIntosh Decl. at 8-9.  The Court concludes that McIntosh may not include these damages in his unjust enrichment claim's amount in controversy.  As a general principle, a plaintiff may aggregate multiple claims against a single defendant to satisfy the jurisdictional amount requirement.  *See, e.g.*, *Snyder v. Harris*, 394 U.S. 332, 335 (1969).  However, McIntosh may not aggregate his claims in this case because he has asserted his libel claim against only David & Linda Gilley—not Amanda Gilley. Def. A. Gilley's Reply at 3; *see also* Compl. ¶ 25 ("Defendant Linda and David Gilley made a false written statement . . . "; *id.* at 5 (labeling McIntosh's libel claim as "Defamation Against *Parents* of Defendant Amanda Gilley") (emphasis added).  McIntosh may not now amend his Complaint through his opposition so as to assert a libel claim against Amanda Gilley.  *See, e.g.*, *Arbitraje Casa de Cambio*, 297 F. Supp. 2d at 170 ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss") (citation omitted).

Moreover, even if the Court had not dismissed McIntosh's libel claim against David & Linda Gilley for lack of personal jurisdiction, McIntosh may not aggregate separate and distinct claims against multiple Defendants.  *See Rogers v. Nathan*, 721 F. Supp. 2d 1393, 1394 (D.D.C. 1989) ("Claims against two or more defendants can be aggregated for the purpose of attaining the jurisdictional amount, as a general proposition, *if they are jointly liable to plaintiff*.") (emphasis added) (internal quotation marks and citations omitted); *see also Motorists Mut. Ins. Co. v. Simpson*, 404 F.2d 511, 513 (7th Cir. 1968) ("[J]urisdiction under section 1332(a) can only be

sustained against those defendants whose respective controversies individually involve matters exceeding the jurisdictional amount.").  Accordingly, the Court concludes that McIntosh may not rely on his alleged $500,000 in damages from his libel claim to satisfy his unjust enrichment claim's amount in controversy.  *See McQueen*, 672 F. Supp. 2d at 88-90 (excluding "benefit of the bargain" damages from plaintiff's amount in controversy because they are not recoverable under a fraudulent misrepresentation claim).

### 2.  McIntosh's Alleged Condominium-Related Expenses Are Not Recoverable Under an Unjust Enrichment Claim

The Court also agrees with Amanda Gilley that McIntosh may not rely on his various condominium-related expenses to bolster his unjust enrichment claim's amount in controversy because it is legally certain that such expenses are not recoverable under an unjust enrichment theory.  *See* Def. A. Gilley's Mot. at 10-11; Def. A. Gilley's Reply at 3; *see also News World Commc'ns, Inc.*, 878 A.2d at 1222 ("Unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust.").  McIntosh includes the following four condominium-related expenses in his unjust enrichment claim's amount in controversy: (1) the purchase price of the condominium ($172,500), as well as McIntosh's down payment and closing costs ($10,000); (2) the amount that the condominium has depreciated since it was purchased in 2008 ($50,000); (3) McIntosh's payment of the condominium's monthly expenses for the twenty-four months after Amanda Gilley vacated the condominium ($36,000); and (4) McIntosh's costs in removing Amanda Gilley's name from the condominium's title ($5000).  *See* Compl. ¶ 12; Pl.'s Opp'n to Def. A. Gilley's Mot. at 9; McIntosh Decl. at 6.  The Court shall address each expense in turn.

First, McIntosh may not include the value of the condominium, including the down payment, in his unjust enrichment claim because it is undisputed that Amanda Gilley has not retained an interest in the condominium. *See* Pl.'s Opp'n to Def. A. Gilley's Mot. at 8 (indicating that McIntosh removed Amanda Gilley from the condominium's title); Def. A. Gilley's Reply at 3 (indicating that it is undisputed that Amanda Gilley currently has no legal interest in the condominium). Therefore, as Amanda Gilley has not retained a benefit in the condominium that McIntosh can recover from her under an unjust enrichment theory, McIntosh may not include the condominium's value in the amount in controversy.

Second, the Court also concludes that McIntosh did not confer, and Amanda Gilley did not retain, the $50,000 in which the condominium has depreciated in value. McIntosh Decl. at 6. In fact, the Court cannot conceive, and McIntosh fails to explain, how a *reduction* in the condominium's value is a "benefit" that may be recovered under an unjust enrichment theory. Accordingly, the Court also excludes the value of the condominium's depreciation from McIntosh's alleged amount in controversy.

Third, the Court agrees with Amanda Gilley that McIntosh's payment of $36,000 for the condominium's mortgage, fees, utilities, and maintenance for the twenty-four months after she vacated the condominium are not recoverable under an unjust enrichment claim. *See* Def. A. Gilley's Reply at 3; *see also* McIntosh Decl. at 6. It is undisputed that the condominium's mortgage was solely in McIntosh's name, *see* First Amanda Gilley Decl. ¶ 14; McIntosh Decl. at 3, and that Amanda Gilley retains no legal interest in the condominium, *see* Pl.'s Opp'n to Def. A. Gilley's Mot. at 8; Def. A. Gilley's Reply at 3. McIntosh's payment of his own mortgage for a condominium he now exclusively owns during a time Amanda Gilley no longer resided there

cannot be said to have benefitted Amanda Gilley. *See* Def. A. Gilley's Reply at 3. Therefore, these expenses are not recoverable under an unjust enrichment theory.

McIntosh's erroneous inclusion of this $36,000 under an unjust enrichment theory is likely attributable to McIntosh's mingling of the two distinct doctrines of contracts and quasi-contracts, or unjust enrichment claims. It is undisputed that Amanda Gilley paid the expenses on the condominium, including the mortgage, for the several months while she alone occupied the premises. *See* First Amanda Gilley Decl. ¶ 14, McIntosh Decl. at 3. McIntosh appears to claim that such activity evidences how Amanda Gilley breached the parties' contract that she was to pay the condominium's expenses. *See, e.g.*, McIntosh Decl. at 3 ("It was also agreed that Ms. Gilley would pay the [condominium's] monthly mortgage and utilities as a business expense from the profits and revenue from AKG Photography."). Under D.C. law, however, an unjust enrichment claim may not be asserted when a contract governs the parties' relationship. *Emerine*, 680 A.2d at 1383. Additionally, the costs McIntosh incurred in paying the condominium's expenses after Amanda Gilley vacated the condominium is not the proper measure of the restitution interest recoverable under an unjust enrichment claim. *See, e.g.*, *Peart v. D.C. Housing Auth.*, 972 A.2d 810, 820 (D.C. 2009) (explaining that in an unjust enrichment claim, the plaintiff's "restitution interest is to be measured by reference to the value of her services *to* [the defendant], not by reference to the actual costs [the plaintiff] incurred in providing them."). Accordingly, for the aforementioned reasons, McIntosh cannot recover the $36,000 in condominium expenses under an unjust enrichment claim, and therefore the Court shall exclude this amount from the unjust enrichment claim's amount in controversy.

Finally, McIntosh has also included $5000 in his unjust enrichment claim's amount in

controversy for costs he incurred in removing Amanda Gilley's name from the condominium's title. *See* Pl.'s Opp'n to Def. A. Gilley's Mot. at 9; McIntosh Decl. at 6. These costs, however, were not paid to Amanda Gilley and there is no indication that Amanda Gilley somehow unjustly retained a benefit from having her name removed from the condominium's title. Therefore, McIntosh may not include this $5000 in his unjust enrichment claim's amount in controversy.

In conclusion, the Court shall exclude the foregoing condominium-related expenses from the unjust enrichment claim's amount in controversy. Based on the facts presented, such expenses are not recoverable under an unjust enrichment claim because McIntosh did not confer them to Amanda Gilley, she did not retain them, or D.C. law precludes their recovery as they are governed by a contract. *See McQueen*, 672 F. Supp. 2d at 88-90 (excluding "benefit of the bargain" damages from plaintiff's amount in controversy because they are not recoverable under a fraudulent misrepresentation claim).

3.    McIntosh's Remaining Expenses

After excluding the aforementioned expenses from McIntosh's declaration, there remains only $43,914.36[11] in benefits allegedly conferred to Amanda Gilley. Def. A. Gilley's Reply at 3; *see also* McIntosh Decl. at 5-8. McIntosh also claims that AKG's profits in the amount of $4000 a week should be added to this amount. Pl.'s Opp'n to Def. A. Gilley's Mot. at 2 ("Upon

---

[11] This $43,914.36 figure includes the following amounts that McIntosh alleges he gave Amanda Gilley: (1) $16,307.23 to purchase equipment for AKG, as well as to move herself and AKG to the District; (2) $6335 for rent at the Fort Belvoir apartment from November 2007 to May 2008; (3) $4500 to travel to Japan; (4) $4000 to travel to Brazil; (5) $3500 to take a December 2007 Caribbean cruise; (6) $2500 to take a November 2007 Caribbean cruise; (7) $2800 in miscellaneous expenses for November 2007 to May 2008, including groceries, photography supplies, and materials; (8) $2100 payment for the utilities at the Fort Belvoir apartment from November 2007 to May 2008; (9) $1278.63 to move herself and AKG from Texas to Fort Belvoir; (10) $593.50 to move herself and AKG from Fort Belvoir to the condominium in the District. McIntosh Decl. at 5-8.

information and belief, AKG is grossing approximately $4,000 per week in profits.").  Amanda

Gilley disputes McIntosh's estimation of AKG's profits and has filed a declaration in which she

provides that AKG has earned a net profit of $19,991 since its inception in 2007.  Second

Amanda Gilley Decl. ¶ 6.  The Court resolves this factual dispute by adopting Amanda Gilley's

recitation of AKG's net profits, as it is undisputed that she has run AKG's daily operations and

she has attested to AKG's profits under oath.  *See Mineta*, 333 F.3d at 198 (explaining that in a

motion to dismiss under Rule 12(b)(1) courts may "consider the complaint supplemented by

undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus

the court's resolution of disputed facts." ) (citations omitted).  By contrast, McIntosh's claim of

$4000 in weekly profits is completely unsubstantiated and does not appear either in the

Complaint or in McIntosh's declaration.  *See* Compl. ¶ 21; Pl.'s Opp'n to Def. A. Gilley's Mot.

at 2.  Therefore, the only evidence in the record is that AKG's net profits since 2007 are $19,991.

Disgorgement of profits is a well recognized remedy for unjust enrichment.  *See, e.g.*,

*Griffith v. Barnes*, 560 F. Supp. 2d 29, 35 (D.D.C. 2008) (noting that under D.C. law, "[w]hen

there is unjust enrichment, disgorgement is an appropriate remedy"); *United States v. Philip*

*Morris, Inc.*, 310 F. Supp. 2d 58, 63 (D.D.C. 2004) ("Disgorgement of ill-gotten gains is . . .

remedial, serving to deprive a wrongdoer of unjust enrichment.").  Accordingly, McIntosh's

share of AKG's $19,991 in profits may be included in his unjust enrichment claim's amount in

controversy.  However, even when construing the facts in McIntosh's favor by assuming that all

of $19,991 in profits are recoverable under his unjust enrichment claim, McIntosh's claim totals

only $63,905.36[12]—less than the $75,000 jurisdictional threshold.  Def. A. Gilley's Reply at 4.

_____

[12] $63,905.36 is the sum of the $19,991 in profits and the aforementioned $43,914.36 in
benefits.

Moreover, the Court is very confident that McIntosh will in fact recover far less than $63,905.36 given that only a portion of the expenses he alleges to have given Amanda Gilley actually benefitted her exclusively. For example, McIntosh has included expenses for paying rent, utilities, and groceries for the seven months Amanda Gilley resided with him in his apartment in Fort Belvoir. *See* McIntosh Decl. at 6-7; Decl. A. Gilley ¶ 11. While McIntosh had previously requested proportional reimbursement from Defendants for these expenses, presumably because such expenses benefitted him as well, McIntosh included the full amount of these expenses when attempting to satisfy the jurisdictional amount requirement. *See, e.g.*, Def. A. Gilley's Mot., Ex. E, at 4 (Email from McIntosh to various Defendants (Dec. 12, 2008)) (seeking "proportional reimbursement" from Defendants for certain expenses, including rent and groceries). Therefore, the Court is very confident that McIntosh is not entitled to recover the entire amount of several of his expenses comprising the aforementioned $63,905.36 amount; thereby further solidifying the Court's conclusion that the actual amount in controversy for McIntosh's unjust enrichment claim is less than $75,000.

In conclusion, for the reasons set forth above, the Court is very confident that McIntosh will be unable to recover in excess of $75,000 from Amanda Gilley under an unjust enrichment theory. Therefore, the Court lacks jurisdiction over this action pursuant to 28 U.S.C. § 1332, and the Court shall grant Amanda Gilley's motion to dismiss the Complaint for lack of subject matter jurisdiction.[13]

---

[13] As such, the Court does not address Amanda Gilley's argument that McIntosh's amount in controversy was not claimed in good faith, *see* Def. A. Gilley's Mot. at 11, or her motion for summary judgment, *see id.* at 11-12.

D.      *Motions for Sanctions*

Finally, the Court turns to the various motions for sanctions asserted by the parties under 28 U.S.C. § 1927 ("§ 1927 ").  Section 1927 provides that:

> Any attorney or other person admitted to conduct cases in any court in the United States or any Territory thereof who multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess cost, expenses, and attorneys' fees reasonably incurred because of such conduct.

The purpose of § 1927 is to allow the Court "to assess attorney's fees against an attorney who frustrates the progress of judicial proceedings."  *United States v. Wallace*, 964 F.2d 1214, 1218 (D.C. Cir. 1992).  Before imposing sanctions on an attorney, the Court must evaluate whether the attorney's conduct was "*at least* reckless[.]"  *Id.* at 1217.  For an action to be considered reckless, there must be a "conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man."  *Id.* at 1220 (quoting Restatement (Second) of Torts § 500 cmt. g (1964)).  Although "[t]he law of this Circuit . . . is unsettled over whether a court must find an attorney's actions to be in bad faith before imposing sanctions," " 'at a minimum . . . unintended, inadvertent, and negligent acts will not support an imposition of sanctions under section 1927.' "  *Id.* at 1218-19 (quoting *Cruz v. Savage*, 896 F.2d 626, 631 (1st Cir. 1990)).

Once the moving party has met its burden, the Court may then award sanctions under § 1927.  As the D.C. Circuit has instructed, however, "the power to assess costs on the attorney involved is a power which the courts should exercise only in instances of serious and studied disregard for the orderly process of justice."  *Wallace*, 964 F.2d at 1220 (quoting *Overnite Transp. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789, 795 (7th Cir. 1983)) (internal quotation

marks omitted); *see also Dreiling v. Peugeot Motors of Am., Inc.*, 768 F.2d 1159, 1165 (10th Cir. 1985) ("The power to assess costs against an attorney under § 1927 . . . is a power that must strictly be construed and utilized only in instances evidencing a 'serious and standard disregard for the orderly process of justice.' " (quoting *Keitel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163, 1167 (7th Cir. 1968))).   Accordingly, the D.C. Circuit has upheld the imposition of § 1927 sanctions when "the attorney's behavior has been repeated or singularly egregious." *Wallace*, 964 F.2d at 1220.

In this case, Amanda Gilley and Jeff & Kristin Gilley have moved for sanctions against McIntosh under § 1927.  McIntosh has, in turn, filed a parallel motion for sanctions against Jeff & Kristin Gilley.  For the reasons set forth below, the Court shall deny Amanda Gilley's, Jeff & Kristin Gilley's, and McIntosh's motion for sanctions.

1.    Amanda Gilley's Motion for Sanctions

Amanda Gilley argues that § 1927 sanctions are appropriate against McIntosh because McIntosh filed the Complaint in bad faith, as evidenced by his failure to mention that he and Amanda Gilley were once romantically involved, his inflation of the unjust enrichment claim's amount in controversy by including the value of the condominium that he owns, and his frivolous claims against her family members that were intended to harass them into a settlement.  *See* Def. A. Gilley's Mot. at 12-13.  Although McIntosh offers no rebuttal to these charges in his opposition, *see generally* Pl.'s Opp'n to Def. A. Gilley's Mot., the Court nevertheless finds that McIntosh's assertion of an unjust enrichment claim against Amanda Gilley does not meet the "high threshold" of recklessness.  *Wallace*, 964 F.2d at 1219-20 ("[R]ecklessness . . . requires deliberate action in the face of a known risk, the likelihood or impact of which the actor

inexcusably underestimates or ignores.").

Significantly, Amanda Gilley appears to acknowledges that McIntosh has asserted a non-frivolous unjust enrichment claim against her when she argues that the actual amount in controversy for McIntosh's unjust enrichment claim is less than the jurisdictional amount. *See* Def. A. Gilley's Mot. at 10 ("Though Plaintiff pleads for damages exceeding the threshold, contemporaneous documents establish that the amount in controversy . . . is merely $16,000."). Although Amanda Gilley may dispute the ultimate value of McIntosh's unjust enrichment claim, there is no indication that McIntosh has asserted a frivolous unjust enrichment claim, as opposed to one that is below the jurisdictional threshold. The Court finds that, on the present record, there is insufficient evidence to prove that McIntosh counsel's decision to include those additional expenses in the amount in controversy was caused by something other than "unintended, inadvertent, [or] negligent act[s]." *Wallace*, 964 F.2d at 1219. Also, in light of McIntosh's unjust enrichment claim being non-frivolous, the Court finds that the Complaint's omission of McIntosh and Amanda Gilley's former romantic relationship does not itself rise to the "high threshold" of recklessness. Finally, Amanda Gilley has presented no legal authority to support her claim that McIntosh's allegedly reckless acts in regards to other Defendants allows her, a third-party to such allegedly reckless acts, to recover under § 1927. Therefore, the Court shall also reject Amanda Gilley's reliance on such acts as a means to procure sanctions against McIntosh's counsel. In conclusion, for the foregoing reasons, the Court shall deny Defendant Amanda Gilley' motion for sanction under § 1927.

> 2. <u>Jeff & Kristin Gilley's Motions for Sanctions</u>

Jeff & Kristin Gilley also move for sanctions in the amount of the attorney fees and costs

they incurred in defending the Complaint. Defs. J & K. Gilley's Mot. at 6-7. Specifically, they argue that their inclusion in the Complaint was unreasonable and vexatious because the Complaint does not state a claim against them, other than allowing their sister Amanda Gilley to move in with them, and the Complaint was filed in bad faith as it omits reference to McIntosh's former romantic relationship with Amanda Gilley. *Id.* For the reasons set forth below, the Court shall deny Jeff & Kristin Gilley's motion for sanctions.

"[T]he power to assess costs on the attorney involved is a power which the courts should exercise only in instances of serious and studied disregard for the orderly process of justice." *Wallace*, 964 F.2d at 1220 (quoting *Overnite Transp. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789, 795 (7th Cir. 1983)) (internal quotation marks omitted). The attempt by McIntosh's counsel to state a claim against Jeff & Kristin Gilley, while ultimately unsuccessful, does not rise to the level of "serious and studied disregard for the orderly process of justice." *Id.* As the D.C. Circuit in *Wallace* explained, § 1927 sanctions are appropriate when "the attorney's behavior has been repeated or singularly egregious." *Id.* (citing, *inter alia*, *Fritz v. Honda Motor Co.*, 818 F.2d 924, 925 (D.C. Cir. 1987) (upholding § 1927 sanctions when counsel "repeatedly took actions which required [the defendant] to expend unnecessary time and money, even though he had no intention of pursuing this litigation.")). The Court finds that, at this early stage of the litigation, the actions of McIntosh's counsel, although not endorsed by the Court, are not repeated or singularly egregious so as to warrant the imposition of § 1927 sanctions.

### 3. McIntosh's Motion for Sanctions

Finally, McIntosh moves for sanctions against Jeff & Kristin Gilley's attorney, arguing that their attorney prevented service of process on Amanda Gilley while she resided in their

30

home. *See* Pl.'s Opp'n to Defs. D. & L. Gilley's Mot. at 4.  In response, Jeff & Kristin Gilley

argue that these allegations are meritless, irrelevant, and without factual support, and the Court

should deny the motion.  Defs. J. & K. Gilley's Reply at 4.  The Court agrees with Jeff & Kristin

Gilley and shall deny McIntosh's motion for sanctions because, absent some factual support

other than the bare allegations in McIntosh's opposition, the Court is unable to conclude whether

the actions of Jeff & Kristin Gilley's counsel are sanctionable under § 1927.

In conclusion, the Court shall deny Amanda Gilley's, Jeff & Kristin Gilley's, and

McIntosh's motion for sanctions under 28 U.S.C. § 1927.

## IV. CONCLUSION

For the foregoing reasons, the Court shall GRANT Jeff & Kristin Gilley's [4] Motion to

Dismiss.  Additionally, the Court shall GRANT David & Linda Gilley's [6] Motion to Dismiss.

The Court shall also GRANT Amanda Gilley's [17] Motion to Dismiss.  The Court, however,

shall DENY Amanda Gilley's [17] Motion for Sanctions, Jeff & Kristin Gilley's [4] Motion for

Sanctions, and McIntosh's construed motion for sanctions.  An appropriate Order accompanies

this Memorandum Opinion.


Date: November 30, 2010.


_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge